# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALBERTO MUESES and YEIMY MUESES<br><br>Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC<br><br>Defendants. | Case No.: 1:24-cv-8808<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff Alberto Mueses and Plaintiff Yeimy Mueses (collectively "Plaintiffs") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax"), (referenced collectively as "Defendants").

## I. INTRODUCTION

1. Plaintiffs' Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants, each a consumer reporting agency, for reporting inaccurate information on Plaintiffs' consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiffs from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiffs' eligibility for credit.

1

## II. JURISDICTION AND VENUE

2. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendant Trans Union is headquartered in this district, and Plaintiffs incurred damages in this district.

4. Defendants transact business here; as such, personal jurisdiction is established.

## III. PARTIES

5. Plaintiffs incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6. Plaintiffs are a natural person and a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

8. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling,

evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties.

9. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

10. Upon information and belief, Defendants disburse consumer reports to third parties under contract for monetary compensation.

11. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

### IV. FACTUAL BACKGROUND

13. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17. Defendants report consumer information about Plaintiffs and other consumers through the sale of consumer reports.

18. Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information:</u> this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19. Defendants obtain consumer information from various sources, including furnishers that provide consumer information to Defendants, and information Defendants

4

independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

20. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in its reporting of the effects of bankruptcy proceedings and orders upon certain accounts, including accounts that are reaffirmed during a consumer's bankruptcy.

21. Consequently, Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers after the consumer bankruptcies are dismissed, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

22. Defendants also routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers after they have their bankruptcies dismissed.

23. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendants' reports.

24. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

25. The information reported by Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer reports.

26. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

27. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

28. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

29. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

30. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

31. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

32. Defendants voluntarily obtained Plaintiffs' consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiffs' consumer reports.

33. Defendants are well aware that when a Chapter 13 bankruptcy is dismissed, none of a consumer's debts and accounts are discharged in bankruptcy.

34. Defendants receive information about account payments/settlements of debts directly from furnishers of account/tradeline information.

35. However, Defendants regularly report inaccurate information about consumers.

36. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report information regarding debts based on information they know is incomplete or inaccurate.

37. Consequently, Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to Defendants, already included in Defendants' credit files, contained in public records that Defendants regularly access, or sourced through Defendants' independent and voluntary efforts.

38. Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiffs, without verifying or updating it as required by § 1681(e)(b), despite possessing information inconsistent with the reported information that establishes that the reported information is inaccurate.

39. Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendants' own files.

40. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following a Chapter 13 dismissal.

41. Thus, Defendants are on continued notice of their inadequate post-bankruptcy dismissal reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiffs*

42. On or about November 29, 2022, Plaintiffs jointly filed for a voluntary bankruptcy under Chapter 13 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas petition number 22-33514.

43. Plaintiffs' bankruptcy was dismissed in or around February 2023.

44. Sometime after Plaintiffs' bankruptcy was dismissed, Plaintiffs obtained Plaintiffs' Trans Union, Experian, and Equifax consumer reports to ensure that Plaintiffs' credit account tradelines and bankruptcy dismissal were being reported accurately.

45. Defendants obtained notice of Plaintiffs' bankruptcy dismissal through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiffs' consumer reports.

46. In the Public Records section of Plaintiffs' consumer report, Defendants included the bankruptcy case numbers, court, filing date, and the fact that Plaintiffs' bankruptcies had been dismissed.

47. Defendants were inaccurately reporting a number of Plaintiffs' accounts as included in Plaintiffs' bankruptcy, even though Plaintiffs' bankruptcy was dismissed.

*Defendant Equifax's Inaccuracies on Plaintiff Alberto Mueses Consumer Report*

48. Defendant Equifax was inaccurately reporting Plaintiff Alberto Mueses' Cornerstone Home Lending Account (the "Cornerstone Account"), opened in March 2019, account no. starting with 972012xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

49. Defendant Equifax was inaccurately reporting Plaintiff Alberto Mueses' First Service Credit Union Account (the "First Service Account"), opened in May 2022, account no.

starting with 548530xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

50. Defendant Equifax was inaccurately reporting Plaintiff Alberto Mueses' First Service Credit Union Account (the "First Service Account 2"), opened in September 2020, account no. starting with 548530xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

51. Defendant Equifax was inaccurately reporting Plaintiff Alberto Mueses' Solar Mosaic LLC Account (the "Solar Mosaic Account"), opened in November 2019, account no. starting with 10xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

*Defendant Trans Union's Inaccuracies on Plaintiff Alberto Mueses' Consumer Report*

52. Defendant Trans Union was inaccurately reporting the Cornerstone Account as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

53. Defendant Trans Union was inaccurately reporting the First Service Account as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

54. Defendant Trans Union was inaccurately reporting the First Service Account 2 as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

55. Defendant Trans Union was inaccurately reporting the Solar Mosaic Account as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was

dismissed.

*Defendant Experian's Inaccuracies on Plaintiff Alberto Mueses' Consumer Report*

56. Defendant Experian was inaccurately reporting the Cornerstone Account as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

57. Defendant Experian was inaccurately reporting the First Service Account as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

58. Defendant Experian was inaccurately reporting the First Service Account 2 as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

*Defendant Equifax's Inaccuracies on Plaintiff Yeimy Mueses' Consumer Report*

59. Defendant Equifax was inaccurately reporting Plaintiff Yeimy Mueses' Kohl's Capital One Account (the "Kohls Account"), opened in November 2014, account no. starting with 639305xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

60. Defendant Equifax was inaccurately reporting Plaintiff Yeimy Mueses' Cornerstone Home Lending Account (the "Cornerstone Home Lending Account 2"), opened in March 2019, account no. starting with 97201xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

61. Defendant Equifax was inaccurately reporting Plaintiff Yeimy Mueses' Toyota Financial Services Account (the "Toyota Account"), opened in August 2020, account no. starting with 704012xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13

bankruptcy was dismissed.

62. Defendant Equifax was inaccurately reporting Plaintiff Yeimy Mueses' Barclays Bank Delaware Account (the "Barclays Account"), opened in July 2016, account no. starting with 407057xxx, as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

*Defendant Experian's Inaccuracies on Plaintiff Yeimy Mueses' Consumer Report*

63. Defendant Experian was inaccurately reporting the Cornerstone Account 2 as included in Plaintiffs' Chapter 13 bankruptcy, although Plaintiffs' Chapter 13 bankruptcy was dismissed.

64. Defendants are aware that CRAs are not permitted to report accounts that are not discharged in a bankruptcy with a status of "discharged through bankruptcy" or "bankruptcy/wage earner".

65. Because Plaintiffs' bankruptcy was dismissed, Defendants should not have reported any of Plaintiffs' Accounts as included in the bankruptcy.

66. Plaintiffs continued payments on the Accounts after the bankruptcy was dismissed, and therefore, the Accounts were not dischargeable or discharged.

67. However, when Plaintiffs pulled Plaintiffs' consumer reports, Plaintiffs discovered that Defendants were not reporting the payments being made on Plaintiffs' Accounts, and were instead reporting it as included in Plaintiffs' bankruptcy, which was dismissed.

68. Defendants do not have reasonable procedures in place to detect and correct the reporting of accounts where the bankruptcy as dismissed, even where Defendants have received information from the furnisher that indicates the Accounts were not included in the bankruptcy.

69. All the furnishers of the above referenced Accounts furnished information to Defendants that indicated Plaintiffs' Account were not included in the bankruptcy, but Defendants rejected or otherwise overrode the data they received.

70. Defendants inaccurately reported that Plaintiffs discharged the Accounts through bankruptcy when the Accounts were not included in the bankruptcy and Plaintiffs' bankruptcy was dismissed.

71. Defendants failed to indicate and report any payments made on the Accounts after Plaintiffs' bankruptcy was dismissed.

72. Defendants' reporting was patently false and materially misleading, as the Accounts were not discharged by Plaintiffs' bankruptcy.

*Plaintiffs' Damages*

73. Upon information and belief, had Defendants accurately reported the Accounts with their correct payment histories and statuses, Plaintiffs' credit scores would have been better.

74. After Plaintiffs' bankruptcy dismissals, Plaintiff Alberto Mueses applied for credit with Capital One, Synchrony, COAF, CPS, FocusOne, JP Morgan Auto, Steling MCC, TD Auto, Truist Auto, and was either approved credit at less favorable rates or denied credit due to the inaccurate reporting of the Accounts by Defendant Trans Union which was published by Defendant Trans Union to creditors during the process of Plaintiff Alberto Mueses' credit applications.

75. After Plaintiffs' bankruptcy dismissals, Plaintiff Alberto Mueses applied for credit with Capital One, Ally, First Community, and Sterling Nissan and was either approved credit at less favorable rates or denied credit due to the inaccurate reporting of the Accounts by Defendant

Equifax which was published by Defendant Equifax to creditors during the process of Plaintiff Alberto Mueses' credit applications.

76. After Plaintiffs' bankruptcy dismissals, Plaintiff Alberto Mueses applied for credit with Capitao One, Nissan, Sterling Nissan, SBA, Ally, Consumer Portfolio, Chartway, and Westlake and was either approved credit at less favorable rates or denied credit due to the inaccurate reporting of the Accounts by Defendant Experian which was published by Defendant Experian to creditors during the process of Plaintiff Alberto Mueses' credit applications.

77. After Plaintiffs' bankruptcy dismissals, Plaintiff Yeimy Mueses applied for credit with Capital One, Ally, First Community, Sterling Nissan, Katy and was either approved credit at less favorable rates or denied credit due to the inaccurate reporting of the Accounts by Defendant Equifax which was published by Defendant Equifax to creditors during the process of Plaintiff Yeimy Mueses' credit applications.

78. After Plaintiffs' bankruptcy dismissals, Plaintiff Yeimy Mueses applied for credit with Capital One, Nissan, Sterling Nissan, SBA, Ally, Consumer Portfolio and was either approved credit at less favorable rates or denied credit due to the inaccurate reporting of the Accounts by Defendant Experian which was published by Defendant Experian to creditors during the process of Plaintiff Yeimy Mueses' credit applications.

79. As a direct result of Defendants' inaccurate reporting, Plaintiffs suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

80. As a direct result of Defendant's inaccurate reporting, Plaintiffs also suffers actual damages in the form of attorney's fees incurred, related to Defendants' inaccurate reporting.

81. Additionally, Plaintiffs suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep,

reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V. COUNT I
**Defendants Trans Union, Experian, and Equifax**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)**

82. Plaintiffs incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. The FCRA requires consumer reporting agencies, like Defendants, maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

84. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiffs' credit file/report.

85. Defendants independently sought information about Plaintiffs' bankruptcy filing and dismissal and voluntarily included it in Plaintiffs' consumer reports.

86. When Defendants voluntarily procured and reported Plaintiffs' bankruptcy information, they had an obligation to follow reasonable procedures to ensure they reported the bankruptcy with maximal accuracy.

87. Defendants received notice of Plaintiffs' payment of the Accounts through information provided by the data furnishers, and therefore had actual knowledge of the payments made.

88. But despite knowing the Accounts were being paid, Defendants inaccurately reported the Accounts as "discharged in bankruptcy" or "bankruptcy/wage earner".

89. Defendants knew or should have known of their obligation under the FCRA, especially those pertaining to reporting debts that were not included in a bankruptcy.

90. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of debts not included in a bankruptcy because the bankruptcy was dismissed.

91. Additionally, Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer's bankruptcy is dismissed.

92. Despite knowing these legal obligations, Defendants willfully and knowingly breached their duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendants deprived Plaintiffs of Plaintiffs' rights as a consumer under the FCRA.

93. Not only did Defendants have prior notice of their unreasonable procedures for reporting a debt not included in a bankruptcy because the bankruptcy was dismissed, but they also possessed information from which they should have known the information reported about Plaintiffs was inaccurate.

94. Defendants knew from the furnishers of the Accounts that the Accounts were being paid after the Plaintiffs' bankruptcy was dismissed.

95. Defendants know that a Plaintiffs' accounts cannot be discharged in bankruptcy if the bankruptcy was dismissed.

96. Yet in this case, Defendants reported the Accounts, which they knew were being paid on as "discharged in bankruptcy."

97. Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' consumer information.

98. Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information they were reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and reasonably available to Defendants.

99. Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

100. Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

101. Defendants' inaccurate reporting damaged Plaintiffs' creditworthiness.

102. Plaintiffs suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting the Account as discharged in bankruptcy, and otherwise failing to report that the Accounts were paid.

103. Plaintiffs also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, frustration, shock, embarrassment, and anxiety.

104. Defendants are direct and proximate causes of Plaintiffs' damages.

105. Defendants are substantial factors in Plaintiffs' damages.

106. Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 24th day of September, 2024.

*/s/ Syed H. Hussain*
Syed H. Hussain, Esq. (IL# 6331378)
**HASEEB LEGAL, LLC**
420 E Waterside Dr #3004
Chicago, IL 60601
T: (954) 225-4934
E: sh@haseeblegal.com